UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

REBECCA LARSEN,

                    Defendant.

NO. CR-05-2002-EFS

**ORDER DENYING DEFENDANT'S
MOTION TO DISMISS, GRANTING
DEFENDANT'S MOTION FOR
DISCOVERY, AND GRANTING
DEFENDANT'S SECOND MOTION IN
LIMINE**

     On November 9, 2005, the Court held a pretrial conference in the above-captioned case.   Mr. Russell Mazzola appeared on behalf of Defendant Rebecca Larsen, who was also present, while the Government was represented by Ms. Jane Kirk.   During that hearing, the Court heard argument on Defendant's Motion to Dismiss (Ct. Rec. 62), Motion for Discovery (Ct. Rec. 65), and Second Motion in Limine (Ct. Rec. 66). After thoroughly considering the parties' arguments and cited authority, the Court rules on these motions as follows:

**I. Defendant's Motion to Dismiss**

     Defendant sets forth two independent grounds upon which she believes her charge of mail fraud must be dismissed.   Each ground for dismissal is addressed below.

///

ORDER ~ 1

**A. Background**

GN Northern ("GNN") is a civil engineering firm headquartered in Yakima, Washington.  In September 2001, GNN contracted (the "2001 Contract") with Bechtel National, Inc. ("Bechtel") to supply and operate a laboratory on the Hanford Reservation (the "Hanford Laboratory"). Originally, the parties agreed GNN would run the Hanford Laboratory through July 2006.  However, in early 2003, Bechtel notified GNN it was exercising the Optional Termination Clause of the 2001 Contract.  As a result, GNN would discontinue supplying and operating the Hanford Laboratory on June 12, 2003.

On February 3, 2003, Bechtel requested GNN provide a detailed proposal to negotiate a final settlement for costs incurred in the performance and termination of the 2001 Contract.  GNN's proposal was submitted to Bechtel on April 15, 2005.  Then, on September 29, 2003, Bechtel auditors demanded additional documentation of costs from GNN. To meet Bechtel's request, Defendant Rebecca Larsen, head clerical employee in the GNN Yakima office, and Amber Riddle, another GNN Yakima office employee, worked together to locate and photocopy the materials sought by Bechtel's auditors.  On October 2, 2005, Defendant mailed an amended termination proposal to Bechtel that included numerous records photocopied and compiled by Defendant and Ms. Riddle.  While compiling the records produced to Bechtel on October 2, 2005, Defendant and Ms. Riddle whited-out the "Ship To" addresses and "Your Number" sections of invoices from a company named "AD-Tek" if those invoices listed a shipping address for one of GNN's offices outside of Yakima or Kennewick, Washington.

ORDER ~ 2

1    Soon after the amended proposal was mailed to Bechtel, Ms. Riddle
2    notified her boyfriend's father, a Bechtel auditor, that she believed she
3    had assisted in submitting altered invoices to Bechtel.  This disclosure
4    initiated a Department of Energy investigation headed by Agent Newton.
5    Agent Newton executed a search warrant on GNN's Yakima office on October
6    7, 2003.  During the search, Agent Newton interviewed Defendant, who
7    allegedly explained she had whited-out various documents in an effort to
8    avoid confusing Bechtel auditors.  According to Defendant, GNN would have
9    supplies shipped to its Non-Yakima/Kennewick offices to avoid unnecessary
10   shipping costs when possible.  For instance, GNN's Troutdale office
11   employees would pick-up supplies from AD-Tek's Boring, Oregon office and
12   transport the supplies themselves to the Hanford Laboratory, rather than
13   having AD-Tek ship the supplies.

14   Bechtel believes GNN's amended proposal included approximately
15   $850,000.00 in overcharges.  However, the charges against Defendant
16   pertain to only certain charges claimed in "Item No. 5" of the amended
17   proposal, which included "Laboratory and Field Equipment" costs.  In Item
18   No. 5, GNN requested $50,970.33 in reimbursement costs.  Bechtel believes
19   Item No. 5 included $11,120.00 in fraudulent overcharges which stem from
20   Defendant's altered invoices.

21   ///
22   ///
23   ///
24   ///
25   ///
26   ///

ORDER ~ 3

**B. Ground No. 1 for Dismissal: Lack of Legal Efficacy[1]**

Defendant argues her mail fraud charge should be dismissed because it lacks legal efficacy. The core of Defendant's argument centers around the nature of the discussions occurring between Bechtel and GNN in 2003 with regard to GNN's early termination. Defendant believes the mail fraud claim lacks legal efficacy because Bechtel allegedly could not have relied on the documents altered by Defendant because GNN had not submitted a Certificate of Current Cost or Pricing Data as purportedly required by 48 C.F.R. § 15.406-2. Defense counsel also argues Bechtel and GNN were involved in negotiations and were entitled to "offer less" and "ask for more" than their "bottom line position." The Government opposes defense counsel's argument by stating "the crime was the mailing of the altered invoices and not [GNN]'s claim. . . ."

The Court agrees with the Government's position. It is irrelevant whether Bechtel was administratively authorized to act on the altered invoices. The mail fraud statute criminalizes the use of the mail system

---

[1]On November 17, 2005, Defendant filed a Motion for Leave to Supplement Exhibits to Plaintiff's Motion to Dismiss Indictment ("Motion to Supplement") (Ct. Rec. 85). Because the Motion to Supplement does not include any newly discovered evidence that was not within defense counsel's control prior to the November 8, 2005, hearing and the Court finds no excusable neglect for the material's late submission, Defendant's Motion to Supplement is denied. However, despite this ruling, the Court notes that the offered materials would not have affected the Court's ruling on Defendant's legal efficacy argument.

ORDER ~ 4

to defraud or attempt to defraud others. 18 U.S.C. § 1341.  Thus, if a jury were to find Defendant placed the altered documents in the mail with the intent of defrauding Bechtel, regardless of whether Bechtel was actually defrauded or could have acted on the deception, she could still be rightly convicted under the federal mail fraud statute.  Thus, ground one of Defendant's Motion to Dismiss is denied.

**C. Ground No. 2 for Dismissal: Deficient Indictment**

Defendant also argues her mail fraud charge must be dismissed because the indictment fails to set forth "materiality" as an element of the mail fraud offense.  During the pretrial conference, the Government conceded this was valid a ground for dismissal, but informed the Court of its intent to obtain a superceding indictment that recited the element of materiality that same day from a currently convening grand jury.  For that reason, the Court reserved ruling on this ground for dismissal until it was determined whether a superceding indictment was obtained.

On November 9, 2005, a Superceding Indictment was filed with the Court. (Ct. Rec. 78.)  The Superceding Indictment cures the materiality problem raised by Defendant by the inclusion of the word "material" on page two, line twenty-three. *Id.* at 2.  Thus, Defendant's second ground for dismissal has been mooted and that portion of the Motion to Dismiss is denied as such.

**II. Defendant's Motion for Discovery**

Defendant moves the Court to order the Government to produce various documents.  The Government has no objection to Defendant's request and

ORDER ~ 5

indicates that all requested documents have been or will be produced to defense counsel.  Accordingly, the Court grants Defendant's motion.

**III. Defendant's Second Motion *in Limine***

Defendant moves the Court to exclude the following evidence from trial:

(1) GNN submitted an altered Nuclear Regulatory Commission Licence application.

(2) Defendant had two civil judgments filed against her in 2001 and filed for bankruptcy in 2004.

(3) Defendant resided in a house owned by GNN and that GNN purchased the house in July 2003.

(4) All records and any information contained therein that the Government received from Bernson, Porter & Co. via their legal counsel pursuant to grand jury subpoena.

During the pretrial conference, the Government indicated it has no intention of offering any of the contested evidence described above at that time.  Thus, the aforementioned evidence is excluded from presentation, subject to motion by the Government at trial for its admittance.  Any such motions must be made and argued outside the presence of the jury.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss **(Ct. Rec. 62)** is **DENIED** (legal efficacy) and **DENIED AS MOOT** (failure to recite materiality as an element in the Indictment).

ORDER ~ 6

2.    Defendant's Motion for Leave to Supplement Exhibits to Plaintiff's Motion to Dismiss Indictment **(Ct. Rec. 85)** is **DENIED.**

3.    Defendant's Motion for Discovery **(Ct. Rec. 65)** is **GRANTED** (the Court may impose sanctions and grant appropriate relief if discovery materials and information are not properly and timely disclosed as required by law).

4.    Defendant's Second Motion *in Limine* **(Ct. Rec. 66)** is **GRANTED.**

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this order and to provide copies to all counsel.

**DATED** this 23rd day of November, 2005.


                        S/Edward F. Shea
                        EDWARD F. SHEA
                United States District Judge


Q:\Criminal\2005\2002.dismiss.wpd

ORDER ~ 7